FILED
COURT OF APPEALS
DIVISION II

2014 AUG -5 AM 10: 40

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Parentage of | No. 44546-8-II |
| A.M.C. | |
| GREGORIO J. MERINO GONZALEZ, | |
| Petitioner, | |
| v. | |
| SOCORRO CONTRERAS SALDIVAR, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — This case involves the efforts of Gregorio J. Merino Gonzalez (Merino) to disestablish himself as the father of A.M.C.[1] Merino appeals from the superior court's denial of his motion to revise the court commissioner's order. The court commissioner's order denied Merino's disestablishment petition and denied Merino's motion to order genetic testing. Merino argues that (1) he was defrauded into believing he was A.M.C.'s father, (2) genetic testing was in the best interests of the child, and (3) the superior court's denial infringed on A.M.C.'s due process rights. We reject his claims. We hold that there was no fraud, and

---

[1] We refer to A.M.C., a minor, by his initials to protect his privacy.

therefore, Merino's claims are time barred. We further hold that A.M.C.'s due process rights are not at issue in this action. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Because the record in this case is sealed, we recite the facts only as necessary to the analysis. A.M.C.'s mother, Socorro Contreras Saldivar (Contreras), ended one relationship and began a new relationship with Merino. Soon after, Contreras learned that she was pregnant and informed Merino. Merino did not ask who the father was, and at no time during Contreras's pregnancy did the couple discuss A.M.C.'s parentage. When A.M.C. was born, Merino voluntarily signed an affidavit of paternity. A valid acknowledgment of paternity was filed on January 3, 2012.

In February, Contreras told Merino that he was not A.M.C.'s father. Nevertheless, Merino took no action until August 28, 2012, when he filed a petition challenging his prior acknowledgment of paternity. He alleged that he had signed the acknowledgment on the basis of fraud.

On December 13, 2012, Merino moved to rescind his acknowledgment of paternity, dismiss himself as the alleged father, and remove himself from A.M.C.'s birth certificate. A court commissioner denied Merino's motions. Merino moved to revise the court commissioner's order, and the Superior Court denied the motion for revision. This appeal timely followed.

## ANALYSIS

Merino argues that he is exempt from the 60-day statutory time bar because Contreras obtained his acknowledgment of paternity through fraud—she knew that there was another possible father and did not disclose that information to Merino. The State argues that Merino failed to prove fraud by clear and convincing evidence. We agree with the State and hold that

Merino failed to prove the existence of any representation of existing fact, therefore his fraud claim fails and the time bar controls.[2]

I. STANDARD OF REVIEW AND RULES OF LAW

This case primarily involves interpreting the Uniform Parentage Act of 2002 (UPA), ch. 26.26 RCW. All analysis as to the meaning of a statute is de novo. *In re Parentage of J.M.K.*, 155 Wn.2d 374, 386, 119 P.3d 840 (2005). This case also involves an allegation of civil fraud. The party claiming fraud has the burden of proving every element of fraud by clear and convincing evidence. *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462, 457 P.2d 603 (1969).

The UPA controls all actions to establish or disestablish paternity in Washington. The UPA allows a man to become the "acknowledged father" of a child by signing an acknowledgment of paternity. RCW 26.26.011(1), .300. Once an acknowledged father is established, he only has a limited time to rescind the acknowledgment of paternity or otherwise challenge the paternity of the child. RCW 26.26.540. An acknowledged father must commence "*any* proceeding seeking to rescind the acknowledgment or denial or challenge the paternity of the child" within the time limits described in RCW 26.26.330 or .335. RCW 26.26.540(1) (emphasis added). Normally, an acknowledged father has 60 days from the date his acknowledgment of paternity became effective to commence the court proceeding. RCW 26.26.330(1)(a). After that time has passed, an acknowledged father may only challenge his acknowledgment of paternity "[o]n the basis of fraud, duress, or material mistake of fact" and within four years after the acknowledgment is filed. RCW 26.26.335(1)(a), (b).

---

[2] Because we hold that Merino's action was time barred, we do not reach his arguments on the merits. However, we briefly raise and dismiss Merino's constitutional issues.

## II. TIME BAR / FRAUD

Merino admits that he did not commence this proceeding within the 60-day time bar of RCW 26.26.330. Indeed, while his acknowledgment of paternity became effective on January 3, 2012, he did not challenge his paternity acknowledgment until August 28, 2012. Instead he argues that his paternity acknowledgment was obtained through Contreras's fraud and, thus, his action was timely under RCW 26.26.335(1)(a). For the following reasons, we disagree.

As the State correctly points out, civil fraud has nine elements: "'(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.'" *Adams v. King County*, 164 Wn.2d 640, 662, 192 P.3d 891 (2008) (quoting *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996)). Each element must be proven by clear and convincing evidence. *Beckendorf*, 76 Wn.2d at 462. The absence of *any* element of fraud is fatal to recovery. *Puget Sound Nat'l Bank v. McMahon*, 53 Wn.2d 51, 54, 330 P.2d 559 (1958). Because Merino is challenging his paternity acknowledgment, it is his burden to prove fraud. RCW 26.26.335(2). And because Merino cannot prove the first element—representation of an existing fact—we reject his fraud claim without analyzing the remaining elements.

## III. REPRESENTATION OF AN EXISTING FACT

Generally, fraud requires an *affirmative* representation. Silence as to a material fact does not constitute fraud unless the alleged defrauder is under a special duty to disclose. *Kaas v. Privette*, 12 Wn. App. 142, 147, 529 P.2d 23 (1974); *Farmers' State Bank of Newport v. Lamon*, 132 Wash. 369, 372, 231 P. 952 (1925). Such a duty to disclose may arise by statute. *Kaas*, 12

Wn. App. at 149-50. More generally, a duty to disclose may be found when the parties have a relationship "'in which confidence is reposed, and in which dominion and influence resulting from such confidence may be exercised by one person over another.'" *Salter v. Heiser*, 36 Wn.2d 536, 550, 219 P.2d 574 (1950) (quoting *Zimmerman v. Bitner*, 79 Md. 115, 28 A. 820, 821 (1894)). For example, silence may constitute a fraudulent misrepresentation when the parties have a fiduciary relationship. *Liebergesell v. Evans*, 93 Wn.2d 881, 889-90, 613 P.2d 1170 (1980). Another example of a duty to disclose arises where one party relies on the other party's superior knowledge or experience. *Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625, 393 P.2d 287 (1964).

Here, the record reveals no affirmative representation by Contreras that Merino was the father. Indeed, at no time during Contreras's pregnancy did the couple discuss who A.M.C.'s father might be. Rather, Merino argues that Contreras committed fraud when she *failed* to reveal that there was another potential father. But no Washington authority establishes a duty to reveal one's sexual history. Nor can such a duty be inferred from the special nature of Merino and Contreras's relationship. It is true that Merino and Contreras were not arm's length actors; their romantic relationship may have given them cause to trust each other to an extent. But the sealed record clearly shows that it was Merino, not Contreras, who held the knowledge and influence in the relationship. While only Contreras could know with certainty whether there was another possible father, Merino had much more life experience and experience with pregnancy than did Contreras. The balance of power in the relationship strongly favored Merino, and Contreras was under no duty to make special disclosures to him. Merino could not prove by clear and convincing evidence that Contreras represented an existing fact.

Because a plaintiff must prove *all* of the elements of fraud, Merino's failure to prove an affirmative representation of an existing fact means that his fraud claim fails at the outset. We do not reach the remaining elements of fraud. We hold that Merino's petition to disestablish paternity is time barred, and we do not reach the merits of Merino's petition.

## IV. SUBSTANTIVE DUE PROCESS

Merino argues that the court's adjudication of paternity deprived A.M.C. of his "fundamental right to an accurate determination of paternity" and deprived the other potential father of parental rights. Br. of Appellant at 14. The State argues that Merino cannot raise the rights of the same child he is attempting to disown. We agree with the State's position, but for a different reason—the disestablishment of paternity does not implicate the rights of nonparties.

First, it is unlikely that Merino has standing to raise the issue of the *other* potential father's constitutional rights. *See City of Seattle v. Montana*, 129 Wn.2d 583, 598, 919 P.2d 1218 (1996) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). Second, a different division of this court has rejected the argument that a petition to disestablish paternity implicates the child's due process rights. *In re Parentage of C.S.*, 134 Wn. App. 141, 152, 139 P.3d 366 (2006). This is because the child is not a party and may bring his own action to establish his father's identity at any time. *Parentage of C.S.*, 134 Wn. App. at 152 (citing RCW 26.26.505, .530(1)).

As in *Parentage of C.S.*, A.M.C. is not a party to this action. If A.M.C.'s true father is found, A.M.C. is free to bring an action to establish parentage.[3] The statute of limitations binds only parties "other than the child." RCW 26.26.540(2). A.M.C.'s due process rights are not at issue and we reject Merino's constitutional arguments. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

HUNT, J.

MELNICK, J.

---

[3] A child may be bound by a "determination of parentage" in certain circumstances. RCW 26.26.630(2). But this action is not a determination of parentage. That term is defined by the statute as "the *establishment* of the parent-child relationship by the signing of a valid acknowledgment of paternity under RCW 26.26.300 through 26.26.375 or adjudication by the court." RCW 26.26.011(7). An action to *disestablish* paternity does not implicate RCW 26.26.630.