[No. 7008–5–III.   Division Three.   February 24, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROY
KENNETH ADAMS, *Appellant.*

*John D. Knodell,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

GREEN, J.—Roy Adams appeals his conviction of possession of a controlled substance with intent to manufacture. We affirm.

It is undisputed that on August 8, 1984, two Grant County police officers, acting under a valid search warrant, entered and searched Mr. Adams' apartment. During the search, the officers seized miscellaneous drug paraphernalia and nine growing plants, later confirmed to bear 19.2 grams of marijuana. They also discovered what the trial court

described as a "self–concealed", "foil–lined closet" equipped with special lights. The trial court found that Roy Adams, as sole occupant, possessed the marijuana with an intent to manufacture.

On appeal, Mr. Adams admits possession of the plants, but contends that the statutory definition of manufacture does not include cultivation of marijuana for one's personal use. Mr. Adams argues that by statute, manufacture of a controlled substance may be accomplished only by means of extraction and/or synthesis, and since neither term encompasses cultivation, he is not guilty of intent to manufacture. We disagree.

Mr. Adams was charged with violating RCW 69.50-.401(a). As used in that statute, manufacture, as defined by RCW 69.50.101(m) means:

> the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction . . . or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis . . . except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use . . .

The term production "includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance." RCW 69.50.101(u). When read in light of the plain meaning and general purpose of the statute, it is evident the Legislature intended that "manufacture" may be accomplished either directly, *or,* in the alternative, indirectly or independently by extraction and/or synthesis. Thus, we do not find it was the Legislature's intent to limit the meaning of "manufacture" as contended by Mr. Adams. To hold otherwise would preclude giving effect to the statutory definition of production, *i.e.,* cultivating, growing or harvesting. Substituting those terms for "production" in RCW 69.50.101(m) makes it clear that the phrase "either directly or indirectly by extraction . . . or independently by means of chemical synthesis, or by a combination of

extraction and chemical synthesis . . ." is an alternative way of manufacturing. One does not cultivate, grow or harvest marijuana "directly or indirectly by extraction . . ." Thus, Mr. Adams' argument must fail.

Mr. Adams also argues that it is the Legislature's intent in RCW 69.50.101(m) to punish more severely those who traffic narcotics, rather than those who produce minimal amounts of contraband for personal use. To the contrary, we construe the Legislature's intent, in adopting the Uniform Controlled Substances Act, was to impose a higher penalty for the manufacture of even small quantities of controlled substances than for mere possession. RCW 69.50.101(m) states in part that manufacture does not include "preparation or compounding" a controlled substance for personal use. The four activities not excepted by the statute contemplate a significantly higher degree of activity involving the controlled substance. Thus, they are more appropriately made felonies without regard to whether the controlled substance so "manufactured" was for personal use or for distribution. We find no merit to Mr. Adams' contention.

Moreover, we find the statutory language is plain, concise, and unambiguous and, therefore, not subject to interpretation. *Kenworthy v. Bolin,* 17 Wn. App. 650, 654, 564 P.2d 835 (1977). When the language of a statute is plain and free from ambiguity, there is no room for construction because the meaning will be discovered from the wording of the statute itself. *Bavarian Properties, Ltd. v. Ross,* 104 Wn.2d 73, 77, 700 P.2d 1161 (1985).

Affirmed.

McINTURFF, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court May 5, 1987.